# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 15, 2013

## STATE OF TENNESSEE v. RONNIE PETER WILSON, III

**Appeal from the Circuit Court for Jefferson County**
**No. 10724     O. Duane Slone, Judge**

**No. E2013-00576-CCA-R3-CD - Filed December 30, 2013**

The Defendant, Ronnie Peter Wilson, III, was convicted by a jury of aggravated robbery, a Class B felony, and conspiracy to commit aggravated robbery, a Class C felony. See Tenn. Code Ann. §§ 39-12-103, -12-107, -13-402. The trial court sentenced the Defendant to an effective twenty-year sentence to be served at one hundred percent. On appeal, the Defendant contends that the evidence was insufficient to sustain his convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

J. Derreck Whitson, Newport, Tennessee, for the appellant, Ronnie Peter Wilson, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; James B. Dunn; District Attorney General; and Jeremy D. Ball, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

At approximately 2:30 p.m. on March 13, 2010, Jeanette Wilson was in the bedroom of her home speaking to her grandson, Christopher Wilson, and co-defendant Curtis Simerly when two African-American men ran into the house through the front door. The men were wearing bandanas around their faces and one of the men shouted, "Prescription task force, get on the ground." Both Ms. Wilson and her grandson testified at trial that the men were armed with knives. One of the men demanded that Ms. Wilson give them "all [her] drugs

and . . . money" and put a knife to Ms. Wilson's throat. The other man put a knife to her grandson's throat. Ms. Wilson told the men that she did not have any drugs or money.

Ms. Wilson's grandson "got loose" and was able to chase the men out of the house with a baseball bat. As the men were leaving, one of them took Ms. Wilson's purse. Once outside, Ms. Wilson's grandson struck one of the men with a bat and attempted to bust out the windshield of their car. The man Ms. Wilson's grandson struck then took the bat and hit Ms. Wilson's grandson across his back with it. The men then fled in "a little silver Kia." Ms. Wilson later identified the Defendant as one of the robbers in a photographic lineup. At trial, both Ms. Wilson and her grandson testified that the Defendant was the man who put a knife to Ms. Wilson's throat, took her purse, and hit her grandson with a bat.

The police officers who responded to Ms. Wilson's 911 call did not find any glass or a baseball bat in Ms. Wilson's driveway. However, a gold capped tooth was found in the driveway. Ms. Wilson's purse along with a bandana and a shirt were found near the road a short distance from Ms. Wilson's home. Ms. Wilson testified that her wallet and some prescription medication was missing from the purse when it was found. Ms. Wilson also testified that she had $200 "that got missing" around the time of the robbery, but she was unsure if the men had taken it. Ms. Wilson admitted at trial that she had a conviction for passing a worthless check. However, both Ms. Wilson and her grandson denied that she sold drugs.

Emily Fugate testified that on March 13, 2010, she was driving to an appointment when she saw "a light-colored" car with "a young black man . . . hanging out the window." Ms. Fugate saw the man throw something from the car. After her appointment, Ms. Fugate went back to the area and called a friend that worked for the police department. After searching the area, the police officer found a small knife with a black handle. Ms. Fugate initially testified that she believed she saw the man throw the knife sometime between 9:30 and 10:00 a.m. However, Ms. Fugate later admitted that she was unsure of exactly when she saw the knife thrown from the car and agreed that if the police report stated it was around 2:30 p.m. that would be correct.

Preston Proffitt testified that he pled guilty to robbery and conspiracy to commit aggravated robbery for his involvement in the robbery of Ms. Wilson. According to Mr. Proffitt, Mr. Simerly asked him if he wanted to help him commit a robbery. Mr. Proffitt agreed and called the Defendant to ask for his help. All three men met to plan the robbery in a parking lot. Mr. Proffitt and the Defendant followed Mr. Simerly to Ms. Wilson's house. Mr. Simerly went into the house "to buy a pill" and called Mr. Proffitt to let him know that it was safe for him and the Defendant to enter. Mr. Proffitt denied that either he or the Defendant used a knife during the robbery. Mr. Proffitt testified that the Defendant took Ms.

Wilson's purse and later threw it out of the car. Mr. Proffitt also testified that the Defendant had $200 after the robbery but would only give Mr. Proffitt $20 because he needed to fix his windshield.

Mr. Simerly testified that he pled guilty to aggravated robbery and conspiracy to commit aggravated robbery for his involvement in this case. Mr. Simerly testified that Mr. Proffitt called him to ask if he could "get him some pills." According to Mr. Simerly, he agreed to buy pills for Mr. Proffitt and met him at a parking lot. Mr. Simerly testified that when he met Mr. Proffitt, the Defendant was with him. Mr. Simerly then went to Ms. Wilson's house. According to Mr. Simerly, while he was purchasing pills from Ms. Wilson, the Defendant and Mr. Proffitt came running into the house, and he and the Defendant began fighting. Mr. Simerly testified that he did not remember seeing a knife. However, Mr. Simerly admitted that he gave an earlier statement to the police in which he said the Defendant put a knife to Ms. Wilson's throat. Mr. Simerly also testified that he had frequently bought pills from Ms. Wilson and her grandson in the past.

Jamie Smith testified that she pled guilty to facilitation of aggravated robbery for her participation in this case. Ms. Smith admitted that she drove Mr. Simerly to meet Mr. Proffitt and the Defendant, and then she drove Mr. Simerly to Ms. Wilson's house with Mr. Proffitt and the Defendant following them. Ms. Smith testified that she stayed in the car as Mr. Simerly went into the house. Mr. Proffitt and the Defendant parked beside her car. Ms. Smith testified that she saw the men cover their faces and then go into the house. The men came running out a few minutes later followed by Ms. Wilson's grandson and Mr. Simerly. Ms. Smith testified that she did not see either Mr. Proffitt or the Defendant with a knife as they entered the house. Ms. Smith also testified that she had driven Mr. Simerly to Ms. Wilson's house to buy pills on numerous occasions.

The Defendant gave a statement to police in which he said that Mr. Simerly had planned to take Ms. Wilson's pills because she "had done him wrong and owed him some money." The Defendant admitted that he drove Mr. Proffitt to Ms. Wilson's house but claimed that only Mr. Simerly and Mr. Proffitt went into the house at first. The Defendant stated that after a short time, he went into the house and heard screaming. The Defendant claimed that he yelled at Ms. Wilson to "give them what they want," and then Mr. Simerly began fighting him. The Defendant stated that Ms. Wilson's grandson hit the windshield of his car with a bat and that he took the bat and hit Ms. Wilson's grandson with it. The Defendant claimed that as they were driving away, Mr. Proffitt threw a small, black-handled knife and Ms. Wilson's purse out of the car window. The Defendant admitted that he threw his shirt out of the window because he knew the police would be looking for him. The Defendant also told the police that a gold capped tooth had been knocked out of his mouth in Ms. Wilson's driveway.

The knife found by Ms. Fugate was never tested for finger prints. Defense counsel's investigator testified at trial that Mr. Simerly had previously stated to him that the Defendant never entered Ms. Wilson's bedroom and that he never saw anyone with a knife that day. The investigator also testified that Ms. Wilson's grandson admitted to him that Ms. Wilson used to sell drugs. After hearing the foregoing evidence, the jury convicted the Defendant of aggravated robbery and conspiracy to commit aggravated robbery.

ANALYSIS

The Defendant contends that the evidence was insufficient to sustain his convictions. The Defendant's sole argument on appeal is that the State failed to prove a deadly weapon was used during the robbery because Ms. Fugate testified that she saw the knife being thrown from a car sometime between 9:30 and 10:00 a.m. on the morning of March 13, 2010. The State responds that the evidence was sufficient to sustain the Defendant's convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

Aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" when accomplished with a deadly weapon. Tenn. Code Ann. §§ 39-13-401, -402. Theft of property occurs when a person, "with intent to deprive the owner of property, . . . knowingly obtains or exercises

control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). A conspiracy is committed when two or more people, "each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense." Tenn. Code Ann. § 39-12-103(a).

Here, the evidence was more than sufficient to sustain the Defendant's convictions. With respect to the Defendant's argument that Ms. Fugate's testimony that she saw the knife thrown from a car in the morning was inconsistent with the time of the offense, we note that Ms. Fugate's testimony was not the only direct evidence that a knife was used in the offense. Both Ms. Wilson and her grandson testified that the Defendant put a knife to Ms. Wilson's throat. Mr. Simerly also gave a prior statement to the police that the Defendant had put a knife to Ms. Wilson's throat. Furthermore, the Defendant stated to the police that Mr. Proffitt threw a knife out of the car as they were fleeing Ms. Wilson's home. While the Defendant's co-defendants testified that no knife was used in the robbery, the determination of which witnesses were more credible was for the jury to make and not this court. Here, the jury chose to accredit the testimony of Ms. Wilson and her grandson over that of the co-defendants, and we cannot revisit that decision on appeal.

Additionally, Ms. Fugate testified initially that she believed she saw the knife thrown from the car in the morning. However, she later admitted that she could not remember the exact time and that if the police report stated that it occurred around 2:30 p.m. that would be more accurate. Upon conviction, we presume that the jury has resolved all conflicts in the testimony in favor of the State. Here, Ms. Fugate ultimately admitted that she was not sure what time it was when she saw the knife thrown from the car, the Defendant gave a statement to the police in which he admitted that a knife was thrown from the car, and the victims identified the Defendant as one of the perpetrators and testified that he had a knife. Accordingly, we conclude that this issue is without merit.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____

D. KELLY THOMAS, JR., JUDGE

-5-